Our next argument is 25-1306 and 25-1470, Spero v. Mercedes-Benz. Mr. Angellari. May it please the Court, my name is Frank Angellari for Spero and these Mercedes-Benz appeals. So these appeals are the results of 12 IPRs against the three patents at issue. And in the Mercedes case, we believe the board erred in three ways. Before you do that, can you just tell me whether or not you agree with the housekeeping take that I was able to hear in the prior appeal in terms of the impact between the Mercedes-Benz IPRs and the Volkswagen ones? I think the short answer to your question, Your Honor, is yes. So the Mercedes are broader than the VW. There are differences, as Mr. Lurie pointed out, but with respect to the question, after reflecting and conferring, we agree. So if we were to affirm with respect to the final written decisions in the Mercedes-Benz appeals, it would moot the Volkswagen appeal? I believe that's correct, Your Honor. Thank you. Okay. So with respect to the errors, we believe the board, basically, there was a gap between the claims and Alden. Alden's their primary reference. And they closed that gap by expanding the claims, expanding Alden, and expanding the petitioner's arguments. With respect to the claims, I think the clearest example is the classifying limitation, which is effectively, under the board's construction, eliminated from the claim. It's also, I mean, classifying the object, the board said it meant arranging or grouping the object according to some system or principle. Kind of sounds plain meaning-ish to me. So how is that inconsistent with the claim? So there's two points on that, Your Honor. The language that you just read is the board's sort of refashioned version of the ordinary meaning dictionary definition that we put into evidence. The ordinary meaning definition, which the board started with, the dictionary that the board started with, uses the word classes. So it says arranging or grouping in classes the object according to some system or principle. So they omitted the word classes, which in our view is very important because in order to classify from a plain meaning perspective, you need multiple classes. Otherwise, there's nothing to classify. Everything goes in the same. What is your best intrinsic evidence support that the board incorrectly construed classifying? I'm sorry. What is your best intrinsic evidence support that the board incorrectly construed classifying? Absolutely. So it would be Limitation 5, Your Honor. The claim is, do you have Claim 48 in front of you? It's in the blue brief, page 36, if you need to find it. Okay. So what you've identified as Limitation 5 on page 36 of the blue brief? Yes. Do you see that? I do. Yeah. So that breakdown, by the way, is the breakdown that they use in their petition, which is appendix page 5229. You don't need to look at that. I'm just saying that's... And just for record purposes, right now I'm looking at what I'm going to say is Appeal 1306 is the lead. Is that correct? That's correct, Your Honor. Okay. So now link it up for me. Why does Element 5 somehow at odds with the board's determination of what the word classifying means? Will do. Limitation 1 talks about an object indicated by data from one or more sensors. So you have a sensed object. Limitation 5 says that the first light is determined based at least in part on classifying the object. If you have only one class, every time you sense it, you will light it in a certain way. You are no longer... The first light, if you have only one class, the first light is not determined as the claim requires based on classifying the object. Rather, it's determined based on sensing the object, which means that limitation is essentially read out of the claim. The plain meaning of classifying, per the dictionary definition the board decided, has classes. This claim limitation, in order to be operative, requires classes. And so for that reason, Your Honor, we believe that the board's construction effectively read not only the classes part of the ordinary meaning, but essentially the classifying limitation, limitation 5, out of the claim. You have any other questions on classifying? Well, I mean, some of the embodiments seem to, as you're suggesting, distinguish objects by type, but others don't. So that's kind of where I'm wondering whether or not this patent really does require the identification of multiple classes that these different objects would be put into. I don't know if the patent requires it. It's not a position that the patent requires it, Your Honor. We're not saying that the specification demands it. We're saying that this claim requires it. And so the patent has examples, perhaps, that involve classifying within classes and perhaps other examples that don't. But this claim would focus on the examples where you are, you know, classifying an object within multiple classes, within one of multiple classes. So the specification for us is consistent with our interpretation in the sense that… Why don't you show me in the specification itself? Because I think that different embodiments use the term identifying and different embodiments use the term classifying. And so why don't you show me in the specification itself the one or more of the embodiments that you think are using the term classifying in a way that makes it clear that it requires multiple distinct classes to choose from which to put the object in? I don't know that it uses the term classifying. The abstract talks about optimal lighting for task object. That's Appendix 49. Is there a column and line number? That's the abstract. So it's Appendix 49. They talk about maximizing aiming and illumination level. That's Appendix 99 at column 50 lines 50 to 58. And then the board's decision on the identifying… Column 50. I'm sorry, column 50 what line number? 50 to 58. That's optimizing aiming and illumination level. I guess I'm just, I'm kind of lost as to how this helps inform your argument that the board got the definition of classifying wrong. Well, it informs it only in the sense that the specification, I think actually the specification uses identifying, which the board itself cites in discussing identifying for many of these situations where they are in fact deciding whether a sensed object fits in, you know, one or multiple different categories. Having said that, I think that the board, rather the specifications use of identifying to… Well, can I just get clear? Does the specification use the word classify? It uses it a few times, but not a ton. So we're not really relying on it. Show me where. Sure. It talks about classification on column 45 of line 2. It talks about to classify or locate the contents. Again, it uses identifying more for these sort of separation, but… And are you contending that there is some of the use of the term classifying in the spec informs us that your definition rather, your construction rather than the board's is correct? Am I contending that the use of classifying the spec? Yeah. I mean, are you relying on that language in the spec to… No, I'm not relying on the language classifying the spec. I'm relying on the fact that the specification teaches the concept of sensing an object and then deciding does that object fit in this class or this class, and then I treat it differently. It seems like, counsel, you're just relying on what you said was the fifth limitation of the claim itself, nothing specifically elsewhere in the specification and a dictionary definition to support up your proposed construction. Is that right? I think that's, yeah, that's fair that we rely on. Limitation 5 and the argument I just made about how it makes, it's redundant if you just… The argument I just made, limitation 5, you are no longer determining light based on a classification, you're determining light based on sensing, which takes that out. That's the limitation. The specification examples that we put in our brief that deal with the idea of selective illumination, which are simply consistent, but we're not saying it limits, and then the ordinary meaning, which, of course, as I mentioned, the district court cited our dictionary, but then altered it. Excuse me, the board, not district court, cited our dictionary. But those are the three areas of information we're relying on, Your Honor. Yes. Do you want to touch on some of the other issues? Sure. The Alden issue, I think, is briefed in the sense that we just don't think the board, we think the board erred when it said that Alden teaches LEDs that are off unless turned on, but that's heavily briefed. I would just come over, I think there are three areas where the board expanded petitioner's petition, and that's the argument we made on claim 9, claim 21, and claim 26, claim 26 of the 503 patent. But claim 9 in particular, for example, you have a situation where the claim requires, this is, it's on, the language of the claim is reproduced, I think, compliments to Ben's red brief at 58. It has probably the best language for the claim. But if you distill it down, the language that, or the requirements that we are focusing on, claim 9 requires control to diminish glare based on a camera and a non-camera. And the petitioners went through three different theories to, well, they went through two, and then the board came up, in our view, with a third, to try to find a theory where Alden controls to diminish glare based on a non-camera sensor. And neither, none of the theories teach that. The board's theory that it ultimately adopted is different from those that were raised by the petitioner. We know that because they cited our sur-apply, not the petitioner or the reply. We know that because the theory is different. The first two theories that Mercedes raised, the other vehicle is already in the scene before the turn, and they're talking about how they're going to manage that. In the third theory, the vehicle arrives into the scene after the turn. And I say that for the proposition that the board, in our view, did overreach on claim 9 by articulating a theory that wasn't in the petition and the reply. And I'll leave the rest to the briefs unless the court has questions. Okay. Thank you, Mr. Angellari. Mr. Lewis. May it please the court. My name is Damon Lewis for Appellee Mercedes Benz. The board got this case entirely correct after all the proceedings and the expert testimony in a set of consolidated hearings have found that all the challenge claims of the 551, 029, and 503 patents are unpatentable based on Alden alone or in combination of Kobayashi or Harbers. These final decisions were correct in their respect and were supported by substantial evidence, which is the standard review in this matter. I don't have time to go through all the issues. Start with classifying. Sure. That's the one I was going to go through right now. Just post. Now, my brother-in-law on the other side says that the board did not apply the correct theory to his sister. I'm just curious. Brother-in-law. Well, we are brothers at the bench and he is, this is law, so. Yeah, it's all right. I want to directly answer the questions that Judge Moore and Judge Cunningham were getting at whether the claim requires multiple classes of objects to classify. The answer is no. The claim itself, Claim 48 in this instance, does not require any individual classification of multiple items. The only thing that the claim actually requires is that it, there's a first light determined based at least in part on classifying the object based on at least in part on the data and then using that information, it then decides whether or not to dim the segment or not dim it. Now, there was a bit of discussion about some examples in the specification. As your honors are probably aware, the specification is quite broad and includes things that have nothing to do with automotive applications such as headlamps. The specification also includes things such as highlighting of different food items and utensils that have nothing to do with an automotive application. What would you contend is the best intrinsic support for the board's construction of classifying? The best, well, the board didn't construe it, left it as plain and ordinary meaning. And the good reason to do that is because none of the claim limitations require any extraneous limitations that the SPARROW is trying to add via their dictionary definitions or the specifications examples. The board said plain and ordinary meaning, which is blah, blah, blah. I mean, I might be paraphrasing, but the board put some additional words beyond just saying plain and ordinary meaning, right? Do I misremember that with all these different ones going on? I might be misremembering. I don't remember that. So I'm not going to say that you're misremembering. But that may be correct. But the long and short of it is that the claim language does not require the extra requirements that SPARROW was advocating, which would be to distinguish among multiple categories. The claim language itself doesn't require any kind of distinction between multiple categories. All it requires is that the sensors, for lack of a better word, detect an oncoming vehicle and dim the segments that are facing that oncoming vehicle. And because the PTAB's charge is to only construe where is necessary to solve the dispute between the parties, keeping it without the extra limitations is appropriate in that sense. Did I answer your question, Your Honor? I think so. But if I have another question, I'll just ask it. So don't worry. OK. What about this issue with respect to the argument that there was maybe some conflict between another IPR in terms of this harbors reference and the sensing fog or snow conditions? Right. You're looking now at the 1470 appeal, the last issue involving harbors. Now, it is true that Mercedes-Benz and VW both used harbors, and if I'm not mistaken, that's the only overlap in terms of the references that the two parties used. The clarifying issue, I think, is that for both Mercedes and for VW, harbors was a secondary reference. The primary references that were used were completely different. And so if the question is, why would you get one result when your name is VW than you would get when your name is Mercedes? And the answer is with different inputs, you should expect or at least allow for the possibility of different outputs. I think that there's some requirement or some responsibility for the board. I think here it's the same APJ that reached both conclusions, right? To drop a footnote or something to explain whichever came second to explain the discrepancy. We can surmise, I'm sure you better than I, what the differences are between the cases, but the board didn't tell us anything about that, right? That's right. I don't know if the circuit should apply a rule for the board below to differentiate the cases that come before, particularly when there's, I think there are something like 13 IPRs on these three patents. But surmise it to say for purposes of your view at the federal circuit level is that substantial evidence supports the board's finding in our situation where substantial evidence may not have supported the board's finding. Your reasoning in that regard is you're saying, yeah, the second reference, Hobbers was the same, but the Alden here makes the difference? That's not quite my argument, Your Honor. And forgive me, I'm not as familiar with the Volkswagen record as I am with Mercedes'  But in Mercedes' case, we presented expert testimony that went straight to the issue that Sparrow is now saying we didn't present below. So they're saying that, well, they want the ruling that they received in the VW case saying that Hobbers does not disclose a sensor. In our situation, our petition in our expert testimony from the start at least made mention of the fact that Hobbers teaches the presence of a sensor. It says that when fog and snow is sensed, we're going to shift the light towards the yellow end of the spectrum so as to provide a better visibility for the driver in such conditions. We actually had presented evidence from Hobbers on page two of the Hobbers reference, which you can find on appendix 821. Hobbers actually goes into some detail about when the spectral output of the generated beam would be changed. It says that the optoelectric elements can be switched on and off with the spatial distribution of generated light beams depending on the conditions. It continues in that paragraph to note that the external conditions can include weather conditions, bright weather, fog, rain, snow, et cetera, and also includes that there may be some internal conditions such as the shape of the light beam which would be set or desired by the driver. So the Hobbers reference itself discusses how it's going to be aware of the weather conditions amongst other inputs, other stimuli, to alter the light output. That, in our opinion, and what we believe a person having ordinary skill in the art would understand, is teaching a sensor. Now, we haven't discussed it directly, but I believe that this also leads into one of the issues that we raised in our briefing about forfeiture. It is Mercedes' position that we did provide evidence, substantial evidence, that the board could rely on to find that all of the limitations of the claims 29 and 69 of the 503 patent were met by the combination of alders with harbors. Had Sparrow raised at the board below, we don't think the Mercedes has presented enough evidence on this particular topic. We could have pointed the board back to where we had, and the record would have been more fulsome in that regard, but instead they chose to attack the Alden versus harbors combination with completely different argument. And they left the record that way until it got here, where they raised it for the first time. That is a violation of several Federal Circuit cases that say you can't come to the Federal Circuit with new arguments, you need to present the ones you presented below. So, if they had done so, and this is the reason why the forfeiture doctrine exists, if they had done so, if they had presented this argument below, we could have pointed them directly to why we thought that harbors taught the is sensed and sensed requirements as is required by claims 29 and 69. So, because you asked about the classifying, even though I should ask the questions as opposed to you, right, would be appendix page 516L. That's the one where it said classifying. And this would be in appeal number 2025-1306. Can you give me the page number again, please? Yes, appendix 516L. So, at the top of 516L is where it talks about the parties not appearing to dispute that classifying the object includes arranging or grouping the object according to some system or principle. So, I do feel like the board put forth a construction, but then goes on to say you don't need to further construe these claims for purposes of this decision. I'm sorry, I didn't catch the question. I apologize. I probably was really answering your question. But I was pointing out how appendix page 516L is where I saw the construction of classifying the object. We were talking about whether or not I misremembered it. I understand. I don't think I misremembered it. I think I remembered it. Yes, I understand. Yes, that's correct. The board below did understand that there wasn't a dispute that these were the things that were included in the classification, and because there wasn't a dispute, there was no need for the board to construe the claims further. Yeah, but his answer here, I don't know whether I agree with it, but I understand what he's saying, that the definition he put forth included to arrange or group in classes, and that that was not present in the board's construction. And I thought that was his gripe. Well. Am I wrong? Is that the way you understood his argument? I understand Sparrow's argument, at least today, to be saying that the board should have taken the construction—I've lost my page. I apologize. The board should have used the construction distinguishing amongst multiple categories, and there may be some difference between what they said in their opening briefing and what they said in their reply. I'm not certain, but the long and the short of it is that regardless of whether the construction was applied the way—regardless of whether the appellant got the construction they wanted, the board was presented and relied on substantial evidence that the Alden system does actually classify the oncoming vehicle differently from something else. If we look at what Alden actually does, it detects spots that are above a certain threshold, and it defines these spots as two light sources that are near each other, and it uses triangulization to determine the distance, and it analyzes the intensity, size, and location of these dots, and it uses that information to determine which headlight sectors to dim. It is identifying and is classifying the presence of an oncoming vehicle to the exclusion of, for instance, the reflectors that Alden also discusses. Even if we were to accept the additional limitations that Sparrow was advocating for under the planar meeting and in a meeting that Sparrow was advocating, there is still a classification going on in Alden, and Alden does teach this limitation. Okay. Thank you very much. Judge O'Leary, you have some rebuttal time. Just a couple of points, Your Honor. With respect to harbors, I would just offer the court, when we briefed it, we didn't have the A sites. We were citing the VW appeal, and the appendix hadn't been constructed yet, so I can give you the appendix sites to the VW findings that we cited on the Mercedes side, and there at 74, so this is in the 1064 appendix, appeal number 2025-1064, pages 7479 and 7480 are the pages of the VW decisions that articulate the standard for what a petitioner needs to do to prove that harbors teaches sensing fog and snow and find that harbors does not sense fog and snow, so I just offer that for the court. I was trying to articulate, you had asked me questions about the specification with respect to classifying, and I was trying to articulate specification examples that distinguish among multiple classes but use the term identified. Those are in the board's decision at appendix 5159, so those would be additional specification references that we believe support classification definition, and then the last thing, Your Honor, you had asked about the meaning, or maybe I commented on it, but I just wanted to give you appendix sites. The dictionary definition is at appendix 5157. The board's definition, which you asked counsel about, is at 5160, and what I was trying to communicate, I'm not sure if I did it effectively, is that the board's definition basically started from the dictionary definition but took out the word classes, so I'm not sure if I communicated it, but those are the appendix sites. Thank you, Your Honor.